# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **EMILY MARCUM**   ) | |
| ) | |
| **Plaintiff,**   ) | |
| ) | |
| v.   ) | **CIVIL ACTION NUMBER:** |
| ) | **JURY TRIAL DEMANDED** |
| **NATIONAL CREDIT SYSTEMS, INC.,**   ) | |
| a corporation; **WELLINGTON**   ) | |
| **MANOR APARTMENTS, L.P.,** a   ) | |
| partnership; **ENGEL REALTY**   ) | |
| **COMPANY, LLC,** a limited liability   ) | |
| company;   ) | |
| ) | |
| **Defendants.**   ) | |

## COMPLAINT

This is an action brought by the Plaintiff, Emily Marcum, for actual and statutory damages, attorney's fees, and costs for Defendant's violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter "FDCPA"). Plaintiff also seeks compensatory and punitive damages for the Defendant's violations of Alabama's common laws set forth herein.

### JURISDICTION AND VENUE

This Court has jurisdiction under 15 U.S.C. §1692k (d), and 28 U.S.C.

Page 1 of 18

§1331, §1332, and §1367. Venue is proper in that the Defendant transacted business here, and the Plaintiff resides here.

## STATEMENT OF THE PARTIES

1. Plaintiff, Emily Marcum, is over the age of nineteen (19) years and is a resident of the city of Calera in Shelby County, Alabama.

2. Defendant National Credit Systems, Inc. is and at all times pertinent herein was, a foreign corporation or other legal entity organized under the laws of the State of Georgia with its principal place of business in Atlanta, Georgia. Plaintiff asserts that, upon information and belief, Defendant NATIONAL CREDIT SYSTEMS, INC. is a debt collector as defined by the Fair Debt Collections and Practices Act at 15 U.S.C. §1692(a)(6).

3. Defendant WELLINGTON MANOR APARTMENTS, L.P. is and at all times pertinent herein was a domestic limited partnership organized under the laws of the state of Alabama and was doing business at all relevant times herein in the state of Alabama.

4. Defendant ENGLE REALTY COMPANY, LLC is and at all times pertinent herein was a domestic limited liability company organized under the laws of the state of Alabama and was doing business at all

relevant times herein in the state of Alabama.

5. All events herein occurred in Shelby County, Alabama.

## STATEMENT OF FACTS

### *Background*

6. Between September 17, 2010 and July 11, 2011, Plaintiff leased an apartment owned by Defendant Wellington Manor Apartments, L.P. (hereinafter "Wellington").

7. Defendant Engel Realty Company, LLC, (hereinafter "Engel") upon information and belief both acted as an agent of Defendant Wellington and managed the apartment complex where Plaintiff lived.

8. On July 11, 2011 Plaintiff vacated the apartment.

9. Defendant Wellington or its employee or agent, by way of a letter dated July 26, 2011, claimed that Plaintiff and her husband, Mr. Ronald King, left a balance of $2,693.19 upon moving out of the apartment. The letter further stated that if payment in full was not received by August 15, 2011, the balance was subject to being turned over to a collection agency.

10. Plaintiff, on or about August 5, 2011 wrote to Defendant Wellington

and disputed the debt claimed by Defendant.

11. In response to Plaintiff's letter, Sherry Burger-Lee, an employee or agent of Defendants Wellington and or Engel wrote Plaintiff on August 24, 2011 again claiming that the alleged balance of $2,693.19 was due and owing and further stated that if the balance in full was not received by September 15, 2011, the account would be turned over to Defendant National Credit Systems, Inc. (hereinafter "NCS") for collection.

### *Defendant NCS's collection of the debt allegedly owed to Wellington and/or Engel*

12. On or about October 17, 2011, Defendant NCS sent a letter to Plaintiff on behalf of Defendants Wellington and Engel in an attempt to collect the amount claimed by Wellington and/or Engel in its prior letters to Plaintiff. The letter contained the following notice:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the

current creditor.

13. On November 2, 2011, within 30 days of receiving the October 17, 2011 letter, Plaintiff wrote to Defendant NCS and disputed the alleged debt in its entirety and demanded verification of the debt. This letter was sent via certified mail and was received and signed for by Defendant NCS on or about November 4, 2011.

### *Communications from Defendant NCS after receiving Plaintiff's dispute and request for validation of the alleged debt*

14. On or about December 23, 2011, despite receiving Plaintiff's dispute and request for validation of the alleged debt, Defendant NCS called Plaintiff at approximately 8:47 a.m. CST.  In the course of that phone call, the agent or employee of NCS told Plaintiff that the disputed account "has been slated for possible legal action."  The agent or employee of NCS, in response to Plaintiff's explaining that she disputed the debt, stated to Plaintiff that the dispute was "validated" by Experian, Equifax and Transunion and that those entities sent the validation to Plaintiff and that NCS was not responsible for the fact that Plaintiff did not get the "validations" through the postal mail.

15. On or about January 4, 2012, instead of providing verification, an

employee or agent of NCS, Susanna Glover, sent another letter to Plaintiff demanding payment of the disputed debt.

16. In response to the January 4, 2012 letter from NCS's employee or agent Susanna Glover, Plaintiff wrote to Defendant NCS on January 10, 2012 via certified mail and reiterated that she had not received verification of the alleged debt.

17. On or about January 6, 2012, Susanna Glover sent a letter purportedly with verification of the alleged debt. Said verification was comprised of only one page entitled "move out statement." The letter from NCS's employee or agent further stated that "your dispute has been investigated; however, we have yet to find sufficient evidence to validate your claim(s). It is very important that you provide our company with all documentation supporting your position."

18. In response to the letter dated January 6, 2012, purportedly containing verification of the alleged debt, Plaintiff wrote to Defendant, NCS on January 19, 2012 via certified mail. Plaintiff's letter of January 19, 2012 responded to NCS's request for more information and contained a CD containing pictures of the apartment at move-out, a signed affidavit from the current resident of Plaintiff's former apartment

stating, among other things, that the carpet was not damaged as claimed, and a page from Plaintiff's lease for the apartment regarding the disputed pet fee. The letter finally stated that Plaintiff refused to pay the alleged debt.

19. Plaintiff's letter of January 19, 2012 was sent via certified mail and was received and signed for by Defendant NCS on or about January 23, 2012.

### *Defendant NCS's collection of the debt allegedly owed to Lynne Acres Apartments*

20. On or about January 27, 2012, Defendant NCS sent a letter to Plaintiff in an attempt to collect a debt allegedly owed to Lynne Acres Apartments/Somerset.

21. On or about January 31, 2012, Defendant NCS sent a letter to Plaintiff regarding the alleged debt owed to Lynne Acres Apartments/Somerset. This correspondence indicated that NCS had received Plaintiff's correspondence disputing this debt. The correspondence further purportedly included "verification" of the alleged debt.

22. The "verification" sent regarding the Lynne Acres/Somerset debt

showed that the apartment complex was located in the state of Kentucky. The move-out date on the verification information was September 8, 2008.

23. Plaintiff has never lived in the state of Kentucky.

*Defendant NCS's continued collection efforts regarding the debt allegedly owed to Defendants Wellington and or Engel.*

24. On or about January 31, 2012, after receiving Plaintiff's letter stating she refused to pay the disputed debt, Defendant NCS's employee or agent, Susanna Glover, sent a letter to Plaintiff offering to settle the alleged debt owed to Defendants Wellington and/or Engel.

25. On or about February 1, 2012, despite receiving Plaintiff's letter stating that she refused to pay the disputed Wellington/Engel debt, Defendant NCS sent another letter to Plaintiff. This letter contained documentation provided by Defendants Wellington and/or Engel that purportedly verified the debt claimed. The "verification" was another copy of the one page "move out statement" previously sent to Plaintiff and a copy of the lease.

26. On February 14, 2012, Plaintiff wrote to Defendant NCS again via certified mail. This letter addressed both the alleged

Wellington/Engel debt and the Lynne Acres/Somerset debt being collected by NCS.  Plaintiff stated in her letter that she refused to pay either debt and further that she had never lived in Kentucky.

27. This letter was sent via certified mail and was received and signed for by NCS on or about February 16, 2012.

28. With regard to the Lynne Acres/Somerset debt, NCS on or about February 27, 2012 sent Plaintiff a letter and "identity theft affidavit."

29. In June 2012, despite NCS having received all of Plaintiff's disputes and her refusals to pay, Plaintiff received a collection call from Defendant NCS.

30. On or about July 31, 2012, despite NCS having received all of Plaintiff's disputes and her refusals to pay, Plaintiff received a letter from NCS containing an offer to settle the disputed alleged debt owed to Wellington and/or Engel.

## CAUSES OF ACTION

### COUNT ONE
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692 et seq.

31. Plaintiff incorporates by reference all of the above paragraphs of this

Complaint as though fully stated herein.

32. The foregoing acts and omissions of Defendant NCS and its employees and agents constitute numerous and multiple violations of the FDCPA, 15 U.S.C. § 1692 *et seq.*, with respect to Plaintiff.

33. As a result of Defendant NCS's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant NCS.

## COUNT TWO
## NEGLIGENCE

34. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

35. Defendants and their employees or agents failed to prevent and/or negligently participated in improper collection activities in the course of collecting debts allegedly owed by Plaintiff.

36. Defendant NCS and its agents and employees owed a duty to the Plaintiff to not violate the FDCPA and also not to cause her harm in the course of collecting debts allegedly owed by Plaintiff.

37. Defendant NCS through its agents and employees breached that duty causing Plaintiff harm, including but not limited to worry, embarrassment, humiliation, anxiety and mental anguish among other personal injuries.

38. NCS's employees and agents' negligent acts and omissions were done within the scope of employment and within the line of job duties with NCS.

## COUNT THREE
## WANTONNESS

39. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

40. Defendants or their employees or agents acted or failed to act with a reckless or conscious disregard of the rights of Plaintiff with an awareness that harm likely or probably would result.

41. As a result of Defendants' wanton conduct, Plaintiff suffered harm including but not limited to worry, embarrassment, humiliation, anxiety and mental anguish among other personal injuries.

42. Defendants' employees or agents acted within the line and scope of their employment when they caused Plaintiff's harm.

## COUNT FOUR
## NEGLIGENT TRAINING AND SUPERVISION

43. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

44. The Defendants knew or should have known of the conduct set forth herein which was directed at and visited upon Plaintiff.

45. The Defendants knew or should have known that said conduct was improper and violated the law.

46. The Defendants negligently failed to train and/or negligently failed to supervise their employees or agents in order to prevent said improper and illegal conduct.

47. Defendant NCS negligently failed to train and supervise its collectors with regard to the requirements and prohibitions of the FDCPA.

48. As a result of Defendants' negligence, Plaintiff suffered harm including but not limited to worry, embarrassment, humiliation, anxiety and mental anguish among other personal injuries.

## COUNT FIVE
## RECKLESS AND WANTON TRAINING AND SUPERVISION

49. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

50. The Defendants knew or should have known of the conduct set forth herein which was directed at and visited upon Plaintiff.

51. The Defendants knew or should have known that said conduct was improper and violated the law.

52. The Defendants recklessly and wantonly failed to train and/or recklessly and wantonly failed to supervise their employees or agents in order to prevent said improper and illegal conduct.

53. Defendant NCS recklessly and wantonly failed to train and supervise its collectors with regard to the requirements and prohibitions of the FDCPA.

54. As a result of Defendants' reckless and wanton conduct, Plaintiff suffered harm including but not limited to worry, embarrassment, humiliation, anxiety and mental anguish among other personal injuries.

## COUNT SIX
## INVASION OF PRIVACY

55. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

56. Congress explicitly recognized a consumer's inherent right to privacy

in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

57. Defendants and/or their agents intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of Plaintiff, namely, by unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

58. Defendants and their agents intentionally and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

59. Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

60. The conduct of these Defendants and their agents, in engaging in the

above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by these Defendants which occurred in a way that would be highly offensive to a reasonable person in that position.

62. As a result of such intrusions and invasions of privacy, Plaintiff is entitled to punitive and actual damages in an amount to be determined at trial from each and every Defendant.

### *Respondeat Superior Liability*

63. The acts and omissions of the agents/employees of the Defendant NCS who communicated with the Plaintiff complained of were committed within the scope of their employment or agency relationship with their employer or principal.

64. The acts and omissions by the agents/employees were incidental to, or of the same general nature as, the responsibilities these employees or agents were authorized to perform by Defendant NCS in the collection of consumer debts such as the consumer debts allegedly owed by the Plaintiffs.

65. By committing these acts and omissions against the Plaintiff, the agents/employees were motivated to benefit their principal, Defendant

NCS.

66. Defendant is therefore liable to Plaintiff through the Doctrine of *Respondeat Superior* for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its agents/employees in their attempts to collect the alleged debts from Plaintiff.

## DAMAGES

Plaintiff alleges that as a direct and proximate result of the Defendants' acts alleged herein, Plaintiff was caused to incur mental and emotional suffering, frustration, anguish, embarrassment, inconvenience, physical pain, outrage and anxiety.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff claims damages of the Defendants, jointly and severally, in both compensatory and punitive damages, plus interest, costs, reasonable attorney's fees and any such other and further relief as this court deems proper and/or necessary.

In addition to the above, Plaintiff further demands declaratory judgment that Defendant National Credit Systems, Inc.'s conduct violated the FDCPA, statutory damages in the amount of $1,000.00 for the violations of the FDCPA pursuant to 15 U.S.C. § 1692k and costs and reasonable attorney's fees from National Credit

Systems, Inc. for the violations of the FDCPA pursuant to 15 U.S.C. § 1692k.

**<u>PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY</u>**

      /s/ *W. Whitney Seals*
      W. WHITNEY SEALS,
      Attorney for Plaintiff

**OF COUNSEL:**

**PATE & COCHRUN, L.L.P.**
P. O. Box 10448
Birmingham, AL 35202-0448
Telephone: (205) 323-3900
FACSIMILE: (205) 323-3906
filings@plc-law.com

**PLAINTIFF'S ADDRESS:**
**Ms. Emily Marcum**
**210 Flagstone Lane**
**Calera, AL 35040**

**PLEASE SERVE THE DEFENDANTS BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED TO THE FOLLOWING ADDRESS:**

**NATIONAL CREDIT SYSTEMS, INC.**
C/O C T Corporation System
2 North Jackson St., Ste. 605
Montgomery, AL 36104

**WELLINGTON MANOR APARTMENTS, L.P.**
C/O Registered Agent
Mr. William A. Butler
951 18th Street South, Ste. 200
Birmingham, AL 35205


**ENGEL REALTY COMPANY, L.L.C.**
C/O Registered Agent
Mr. William A. Butler
951 18th Street South, Ste. 200
Birmingham, AL 35205